UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORSS MOTELS, INC., individually and as the representative of a class of similarly situated persons, ) ) ) ) *Plaintiff*, ) ) v. ) ) OTIS ELEVATOR COMPANY, and ) JOHN DOES 1-5, ) ) *Defendants*. ) | CIVIL NO. 3:16-CV-1781 (KAD) April 4, 2019 |

**MEMORANDUM OF DECISION ON THE
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Kari A. Dooley, United States District Judge

**Statement of the Case**

This case, initiated by the Plaintiff Gorss Motels, Inc. ("Gorss" or "the Plaintiff"), is one of several putative class actions brought against product suppliers to Wyndham Hotel Group ("Wyndham") and its franchisees. Gorss brings claims arising out of the Defendant Otis Elevator Company's ("Otis" or "the Defendant") alleged sending of an unsolicited facsimile to Wyndham franchisees under the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA"). Pending before the Court is the Plaintiff's Motion for Class Certification. The Court heard oral argument on the motion on January 28, 2019. For the following reasons, the motion is **DENIED**.

**Facts**

The Plaintiff is the former corporate owner of a Super 8 Motel, which was a franchisee of Wyndham, one of the world's largest hotel franchise companies. Gorss operated a Super 8 Motel pursuant to a Franchise Agreement with Wyndham. The Defendant is a manufacturer of elevators,

escalators, and moving walkways. In February 2014, Otis entered into a contract—the "Strategic Sourcing Agreement"—with Worldwide Sourcing Solutions, Inc ("WSSI"), a wholly-owned subsidiary of Wyndham Worldwide Corporation and affiliate of Wyndham. This agreement allowed Otis to become an Approved Supplier of elevator services for Wyndham franchisees. WSSI's "Approved Supplier" program (also known as its "Strategic Sourcing" program) assists Wyndham franchisees in their purchasing of goods and services by, *inter alia,* negotiating prices or volume discounts, with the designated "Approved Suppliers." Once Otis became an Approved Supplier, WSSI would provide information regarding Otis's goods and services to Wyndham franchisees.

In July 2015, a representative of WSSI reached out to Otis regarding a promotional "Fax Blast" to be sent to Wyndham franchisees. After Otis sent WSSI the final version of the promotional flyer, WSSI added a fax disclaimer and Wyndham disclaimer to the document. The disclaimers stated:

> All products and services are manufactured and/or provided by Otis Elevator Company and not by Wyndham World Wide Corporation (WWC) or its affiliates. Neither WWC nor its affiliates are responsible for the accuracy or completeness of any statements made in this advertisement, the content of this advertisement (including the test, representations and illustrations) or any material on a website to which the advertisement provides a link or a reference. Please refer to the applicable brand specifications for your property prior to purchasing products.
>
> This facsimile contains confidential information intended only for the use by Wyndham Worldwide entities. If the reader of this facsimile is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. **If you have received this facsimile by error, please immediately notify us by emailing strategic.sourcing@wyn.com. To opt out from future faxes, email strategic.sourcing@wyn.com or call this toll-free number: (877) 764-4212.**

(Emphasis added.) A third-party vendor, Western Printing, was hired to send the facsimile (the "Fax") to certain Wyndham franchisees. Western Printing further subcontracted the

2

transmission of the fax to one of its own vendors, WestFax. On August 13, 2015, the Plaintiff received the Fax. The Plaintiff alleges that the Fax was successfully transmitted to 2,936 fax numbers. The putative class consists of the Plaintiff as well as the other persons or entities who purportedly received the Fax.[1]

**Standard of Review**

### Rule 23 Class Certification

A party seeking class certification under Federal Rule of Civil Procedure 23 must establish, by a preponderance of the evidence, that the requirements of the Rule are met. *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010). A district court may not certify a class unless it "is satisfied, after a rigorous analysis," that such requirements are met. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). When assessing whether plaintiffs have met this burden, courts must consider "all of the relevant evidence admitted at the class certification stage." *Betances v. Fischer*, 304 F.R.D. 416, 424 (S.D.N.Y. 2015).

Pursuant to Rule 23(a), a class action may be certified only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class [also referred to as commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23 also incorporates an "implied requirement of ascertainability" of the class. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks omitted). Under Rule 23(b)(3), a class may only

---

[1] The parties contest whether the Plaintiff can establish receipt by any of the putative class members because the third party vendor sending the fax did not create or maintain confirmation of receipt data. The court need not address this dispute in resolving this motion.

3

be certified where "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement of Rule 23(b)(3) usually presents a "far more demanding" obstacle to certification than the commonality requirement of Rule 23(a). *See In re Photochromic Lens Antitrust Litig.*, No. 8:10–cv–00984–T–27EA, 2014 WL 1338605, at *16 (M.D. Fla. Apr. 3, 2014); *Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591 (1997). Because the Court deems dispositive the Rule 23(b) predominance analysis, whether the Rule 23(a) requirements are satisfied are neither material to the Court's decision nor further discussed.

As noted above, the predominance requirement is "far more demanding than Rule 23(a)'s commonality requirement." *Windsor*, 521 U.S. at 623-24. Predominance requires that "the resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and that these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013). Here, for example, generalized proof is available on the question of whether the Fax is an "advertisement" under the TCPA. However, even where some issues may be resolved with generalized proof, predominance is not established if those questions are "not more substantial than the questions requiring individualized proof." *Glatt v. Fox Searchlight Pictures,* 811 F.3d 528, 529 (2d Cir. 2016).

The question therefore is whether the legal questions identified by the Plaintiff as common to all proposed class members and for which generalized proof is available "predominate" or are "more substantial" than issues identified by the Defendant, which would require proof individualized to each class member. *See Gorss Motels, Inc. v. AT&T Mobility LLC*, No. 3:17CV403 (JBA), 2019 WL 625699, at *3 (D. Conn. Feb. 14, 2019).

**Discussion**

The Junk Fax provision of the TCPA makes it unlawful for "any person within the United States, or any person outside the United States if the recipient is within the United States ... to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an *unsolicited* advertisement[.]" 47 U.S.C. § 227(b)(1)(c) (emphasis added). The TCPA defines unsolicited advertisement to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*." 47 U.S.C. § 227(a)(5) (emphasis added). "Thus, in order for the Plaintiff to make out a valid TCPA claim, the fax at issue must have been sent without [the recipient's] prior express permission, i.e. consent." *Gorss Motels, Inc. v. AT & T Mobility LLC*, 299 F. Supp. 3d 389, 391 (D. Conn. 2018) (citing *Cochran v. Massey*, No. 3:12-CV-765 DRH DGW, 2014 WL 335288, at *2 (S.D. Ill. Jan. 30, 2014) ("The question of permission or consent is ... dispositive ... under the TCPA.")). The TCPA has exceptions to the rule against unsolicited facsimile advertisements, as well. Generally, an advertiser may send an unsolicited facsimile if there is a pre-existing relationship between the parties and the facsimile contains an opt-out notice that complies with Section 227(b)(2)(D) of the Act.

Here, the parties agree that several questions of law or fact are common questions that can be addressed on a class-wide basis with generalized proof. These include (1) whether the Fax is an "advertisement," as defined in 47 C.F.R. § 64.1200(f)(1); (2) whether Otis is a "sender," under the Act; (3) whether the opt-out notice on the Fax satisfies the requirements of § 227(b); and (4) whether the violations, if proven, were "willful" or "knowing" under the TCPA.

The parties disagree, however, as to many other issues raised in the Plaintiff's claim and whether those issues can be appropriately adjudicated on a class-wide basis. The question of whether the Fax was unsolicited - that is, sent without consent or without "prior express invitation

5

or permission"[2] - is the principal issue on which the parties disagree, and dispositive for purposes of this motion. The Defendant asserts that this issue requires a highly individualized inquiry and body of proof, defeating a finding of predominance as is required under Rule 23. The Plaintiff responds that whether the class members consented is irrelevant because the Federal Communications Commission ("FCC") regulations require that even faxes sent with the consent of the recipient must contain the same opt-out notice required for unsolicited faxes. The Plaintiff further asserts that the Fax did not contain such an opt-out notice. Thus, Plaintiff posits, if the opt-out language was non-compliant with the regulations, whether the 2,936 recipients consented in the first instance is irrelevant and need not be adjudicated at all, let alone on an individualized basis.

The Plaintiff's claim derives from an FCC regulation, the 2006 "Solicited Fax Rule," which required solicited fax advertisements, *i.e.*, those sent to a recipient who has provided prior express invitation or permission to the sender, to include the same opt-out notice required with respect to unsolicited fax advertisements. However, in *Bais Yaakov of Spring Valley v. FCC,* the D.C. Circuit determined that the FCC did not have the authority to promulgate the Solicited Fax Rule and the Rule was unlawful to the extent that it required any opt-out notices on solicited faxes. 852 F.3d 1078, 1082 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 1043 (2018). Thus, after *Bais Yaakov*, only unsolicited faxes are subject to opt-out notice requirements. The Defendant posits that the question of whether the fax was solicited or unsolicited is one that must be assessed on an individualized basis for each putative class member. If the recipient consented, there is no liability. If the recipient did not consent, then and only then may the adequacy of the opt-out notice be assessed as to claims

---

[2] The parties also disagree as to whether the issue of receipt of the fax by the putative class members can be determined with generalized proof or whether an individual inquiry of each class member would be required.

6

brought by that class member. For these reasons, the Defendant argues certification is not appropriate.

The Plaintiff counters that *Bais Yaakov* is not binding in this circuit. *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) ("until the Supreme Court speaks, the federal circuit courts are under duties to arrive at their own determination of the merits of federal questions presented to them."). The Court disagrees. The Second Circuit recently held that:

> [u]nder the Hobbs Act, the courts of appeals 'ha[ve] exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... all final orders' of the FCC that are reviewable under 47 U.S.C. § 402(a). 28 U.S.C. § 2342(1). When agency regulations are challenged in more than one court of appeals, as they were in the present case, 28 U.S.C. § 2112 requires that the multidistrict litigation panel consolidate the petitions and assign them to a single circuit. Challenges to the 2015 Order were assigned to the D.C. Circuit, which thereby became 'the sole forum for addressing ... the validity of the FCC's' order."

*King v. Time Warner Cable, Inc.*, 894 F.3d 473, 476 n.3 (2d Cir. 2018). *Bais Yaakov* was sent to the D.C. Circuit after random selection by the multidistrict litigation panel pursuant to 28 U.S.C. § 2112(a)(3). As such, under the *King* analysis, the D.C. Circuit's decision is binding on this Court. Notably, both the Fourth and Ninth Circuit Courts of Appeals share the Second Circuit's view regarding the impact of a decision on such consolidated matters. *See GTE South, Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999) (Where the multidistrict litigation panel consolidated certain petitions pursuant to § 2112(a) and assigned the matter to the Eighth Circuit, that circuit was held to be the "the sole forum for addressing challenges to the validity of the FCC's rules."); *W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000) (same).

On the precise issue presented here, several courts have followed the D.C. Circuit's decision, either by finding that it is binding nationally, or by choosing to adopt its reasoning. In these cases, courts have gone on to identify the issue of consent as presenting individualized questions of proof sufficient to defeat a predominance claim. *See, e.g.*, *Sandusky Wellness Ctr.,*

7

*LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017) *cert. denied*, 138 S. Ct. 1284 (2018); *Raitport v. Harbour Capital Corp.*, 312 F. Supp. 3d 225, 233 (D.N.H. 2018); *Gorss Motels, Inc. v. Safemark Systems, LP*, 2018 WL 1635645, at \*6 (M.D. Fla. April 5, 2018) ("Without determining whether *Bais Yaakov* is binding in this Circuit, the Court finds the opinion to be persuasive. . . [g]iven that the Solicited Fax Rule does not apply, and the issues of consent cannot be resolved without individualized inquiry, the Court finds that common issues off fact do not predominate and that class certification is inappropriate.").

As noted above, this Court is of the view that *Bais Yaakov* is binding. As a result, whether a TCPA violation is established turns on the question of consent in the first instance. Only where consent is not found would the trier of fact look to the sufficiency of the opt-out notice. Consent is therefore not irrelevant, as posited by the Plaintiff, and the final inquiry is whether the individualized proof necessary on the issue defeats class certification under the predominance analysis.

Very recently, two courts in this circuit, having also followed the result of *Bias Yaakov*, denied this Plaintiff's motion for class certification because the issue of consent required individualized proof for each class member. *See Gorss Motels, Inc*., 2019 WL 625699, at \*5; *Gorss Motels, Inc. v. The Eric Ryan Corp. et al*, 3:17-cv-00126-DJS (D. Conn. Mar. 28, 2019).

Here, the Defendant identifies types of evidence germane to the question of consent, to include, for example, the Franchise Agreement, the nature and scope of the Approved Supplier Program, and, in the case of Gorss itself, the Property Improvement Plan that specifically contemplated work on the elevator at the Super 8 Motel. While some of the evidence might constitute generalized proof that is equally applicable to each class member, the relationship, whether contractual or otherwise, between and among each recipient – *i.e.*, Wyndham, WSSI, Otis, and perhaps others - will need to be assessed on an individualized basis. Indeed, the Defendant has

identified many putative class members with whom it had a pre-existing relationship. The nature of any such relationship is directly probative on the issue of consent. And an individualized inquiry into any prior communications, to include their frequency, nature or content, between the class members and the Defendant would likewise be required. Consent is, after all, something communicated from one party to another. In sum, it is clear to this Court that the individualized inquiry that would need to be undertaken by the Court is precisely the type of inquiry that makes this putative class unsuitable for certification. I therefore join my colleagues who have recently reached the same conclusion.

**Conclusion**

For the foregoing reasons, the Plaintiff's Motion for Class Certification is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of April 2019.

>　*/s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE