# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GORSS MOTELS, INC.,
*Plaintiff*,
v.

OTIS ELEVATOR COMPANY,
*Defendant*.

No. 3:16-cv-1781 (VAB)

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Gorss Motels, Inc., ("Plaintiff" or "Gorss Motels") has sued the Otis Elevator Company

("Defendant") for allegedly sending unsolicited facsimiles in violation of the Telephone

Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47

U.S.C. § 227 ("TCPA" or "Act").

This case is one of several putative class actions lodged against franchisees of Wyndham

Hotel Group, but in this case, class certification has already been denied. *See* Order and

Memorandum of Decision on the Plaintiff's Motion for Class Certification, ECF No. 105 (Apr.

4, 2019) (Dooley, J.).

The Otis Elevator Company also has moved for summary judgment on all of Gorss

Motels's claims. Motion for Summary Judgment, ECF No. 64 (June 1, 2018) ("Def.'s Mot.");

Memorandum of Law in Support of Def.'s Mot., ECF No. 65 (June 1, 2018) ("Def.'s Mem.");

Local Rule 56(a)(1) Statement of Undisputed Material Facts, ECF No. 68 (June 1, 2018) ("Def.'s

SMF").

Gorss Motels has opposed the Otis Elevator Company's motion for summary judgment.

Plaintiff's Memorandum in Opposition to Def.'s Mot., ECF No. 77 (June 22, 2018) ("Pl.'s Opp."); Local Rule 56(a)(2) Statement of Facts, ECF No. 78 (June 22, 2018) ("Pl.'s SMF").

For the following reasons, the Otis Elevator Company's motion for summary judgment is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Allegations[1]

This case arises out of a single facsimile advertisement sent to Gorss Motels on August 13, 2015. Compl. ¶ 11. The Wyndham Hotel Group ("Wyndham"), a hotel franchise company that franchises several brands, including Super 8®, and related lodging subsidiaries including Super 8 Worldwide, Inc. Def.'s SMF ¶ 3.

On October 3, 1988, Gorss Motels first entered into a Franchise Agreement with Super 8 Motels, Inc. to operate a Super 8® lodge for an initial term of twenty years. *Id.* ¶ 27.

In February of 2014, the Otis Elevator Company entered into a contract—the "Strategic Sourcing Agreement"—with Wyndham Worldwide Sourcing Solutions Inc. ("WSSI"), a wholly owned subsidiary of Wyndham Worldwide Corporation and affiliate of Wyndham. *Id.* ¶¶ 4-7.

Through this Agreement, the Otis Elevator Company became an "Approved Supplier" of elevator services for Wyndham franchisees. *Id.* WSSI's "Approved Supplier" program, also known as its "Strategic Sourcing" program, supports the purchasing efforts of Wyndham franchisees by negotiating prices, volume discounts, and commissions for various products and services with designated "approved suppliers." *Id.* ¶ 8. Under the Strategic Sourcing Agreement, once the Otis Elevator Company became an "Approved Supplier," WSSI would provide information regarding Otis Elevator Company's goods and services to Wyndham franchisees,

---

[1] The following facts are undisputed unless otherwise indicated.

and WSSI would then receive a percentage of revenue for any new franchisee contracting with the Otis Elevator Company that was not already an Otis Elevator Company customer. *Id.* ¶ 11.

On July 22, 2014, upon the expiration of its 1988 Franchise Agreement, Gorss Motels applied to Wyndham to continue as a franchisee. *Id.* ¶ 29. That application included Gorss Motels's fax number. *Id.*

On September 10, 2014, Gorss Motels entered into another Franchise Agreement for an additional twenty-year term. *Id.* ¶ 30. The 2014 Franchise Agreement addressed the Approved Supplier program, *id.* ¶ 32, and informed Gorss Motels that "Gorss could, and in some instances was required to, purchase furniture, fixtures, equipment, and other supplies through WSSI's Approved Supplier Program." *Id.* ¶ 34.

Gorss Motels concedes it affirmatively provided its contact information, including the (860) 632-8889 facsimile number, to Wyndham and its affiliates many times during the years it was a franchisee. *Id.* ¶ 35. Additionally, Gorss Motels's fax number was published in Super 8® directories, made available on the Internet for general use, and used in various advertisements and postings over the years. *Id.* ¶¶ 37-39.

Section 3.1 of the 2014 Franchise Agreement required Gorss Motels to renovate its property in accordance with the Property Improvement Plan Report. *Id.* ¶ 50; *see also* Declaration of Suzanne Fenimore Ex. G: Super 8 Worldwide, Inc. Franchise Agreement, ECF No. 73-10 at 8, 12 (June 1, 2018) ("You must renovate and improve the Facility in accordance with any Punch List attached to this Agreement, any Approved Plans and System Standards. . . . The PIP identifies specific items inspected at the Facility and were not in compliance with brand standards and need to be corrected."). Before executing the 2014 Franchise Agreement, on August 26, 2014, Gorss Motels signed the Property Improvement Plan Report, thus

acknowledging and agreeing that Wyndham-approved vendors would receive his contact information to reach out and offer their products and services, which were required to complete the Property Improvement Plan Report. *Id.* ¶ 51; *see also* Fenimore Decl. Ex. G, ECF No. 73-10 at 12 ("By signing this PIP, I acknowledge and agree that select pieces of this PIP may be provided to our approved vendors . . . Only information necessary for the vendor to offer their products and services will be provided, including contact information, property of address, number of rooms, brand converting to, and a list of items related to necessary or required products and services."). Gorss Motels's Property Improvement Plan Report identified the elevators at the Gorss Motels property as not meeting brand quality standards. *Id.* ¶ 52. The Property Improvement Plan Report provided Gorss Motels one year to refurbish the property's elevator from the Otis Elevator Company. *Id.* ¶ 53.

In July 2015, WSSI reached out to Otis Elevator Company with a plan to disseminate information about Otis Elevator Company's products to the Wyndham franchisees. *Id.* ¶ 13. The Otis Elevator Company believed it would be a "Fact Blast" sent to franchisees by e-mail; WSSI intended for the "Fax Blast" to be issued by facsimile. *Id.* ¶¶ 13-17; *compare with* Pl.'s SMF ¶¶ 13-17.

On July 27, 2015, at WSSI's request, Roger Nayle, an Otis Elevator Company employee, provided a one-page, color flyer or "fact sheet" describing the Otis Elevator Company's services. Def.'s SMF ¶ 14. After receiving Mr. Nayle's final version of the flyer, and without further communication with Otis Elevator Company, WSSI added "fax disclaimer" and "WHG disclaimer"[2] language that it had been using for years to the bottom of the flyer, and affixed a prominent Wyndham Hotel Group logo in the bottom right corner. *Id.* ¶¶ 18-19. There is no

---

[2] The disclaimer on the Fax reads as follows: "To opt out from future faxes, email strategic.sourcing@wyn.com or call this toll-free number: (877) 764-4212." *See* also Def.'s SMF ¶ 42.

record of WSSI invoicing Otis Elevator Company for sending the facsimile (the "Fax"), nor is there a record of any payment received by WSSI from Otis Elevator Company regarding the Fax. *Id.* ¶ 20.

On or about August 5, 2015, WSSI asked a third-party vendor, Western Printing, to transmit the flyer by fax to certain specified Wyndham franchisees. *Id.* ¶ 21. Western Printing, in turn, subcontracted the actual transmission of the Fax to one of its own vendors, WestFax. *Id.* ¶ 24. The Otis Elevator Company had no relationship or communication with either Western Printing or WestFax. *Id.* ¶¶ 23, 25.

On August 13, 2015, after receiving an order from Wyndham's vendor, Western Printing, WestFax had the Fax sent from the "973 Source Number" to Gorss Motels's fax number of (860) 632-8889, *id.* ¶ 26, which is a fax number that Gorss Motels had provided to Wyndham many times over the years, both before and after receipt of the Fax. *Id.* ¶ 35. The Fax was sent within the Property Improvement Plan Report's one-year directive for Gorss Motels to refurbish its elevator from the Otis Elevator Company, consistent with Wyndham's standards. *See id.* ¶ 53.

After receiving the Fax, Gorss Motels never called, faxed, e-mailed, or otherwise contacted anyone to request that facsimiles stop, and never informed WSSI that Gorss Motels did not want to receive communications related to Approved Suppliers by fax. *Id.* ¶¶ 40-48.

Steven Gorss, the owner of Gorss Motels, considered all advertising facsimiles to be illegal "junk faxes." *Id.* ¶ 55. "Gorss never reviewed any of the opt-out languages on facsimiles it received, and never called, faxed, emailed, or otherwise contacted anyone to request that facsimiles stop." *Id.* ¶ 60. "Gorss never opted out of receiving faxes sent as part of the Approved Supplier program, and never informed WSSI that Gorss objected to or did not want to receive fax communications relating to Approved Suppliers." *Id.* ¶ 64.

On August 4, 2016, Gorss Motels sold its Super 8® franchise. *Id.* ¶ 65. During the period in which it was a Wyndham property, Gorss Motels received only one fax relating to the Otis Elevator Company, the Fax. *Id.* ¶ 73.

Gorss Motels alleges that the Otis Elevator Company profits and benefits from the sale of goods advertised in the unsolicited fax. Compl. ¶ 12. Furthermore, Gorss Motels alleges that the Fax lacks required opt-out language, *id.* ¶ 14, and that Gorss Motels has lost paper, toner, and time, resources that would otherwise be used in the course of their business activities. *id.* ¶ 34.

### B. Procedural History

On October 27, 2016, Gorss Motels filed a putative class action complaint against the Otis Elevator Company and several unnamed defendants, challenging their alleged practice of sending unsolicited facsimiles in violation of the Telephone Consumer Protection Act of 1991 (or "TCPA"). Compl ¶¶ 1-2.

On the same day, Gorss Motels moved to certify the class, or in the alternative, stay proceedings. Motion for Class Certification and for Temporary Stay of Further Proceedings on that Motion, ECF No. 3 (Oct. 27, 2016).

On January 25, 2017, the Otis Elevator Company filed a motion to stay the litigation, pending a decision by the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") on the viability of the FCC's "solicited fax" rule. Motion to Stay Litigation, ECF No. 24 (Jan. 25, 2017).

On February 8, 2017, Gorss Motels objected to the Otis Elevator Company's motion, Memorandum in Opposition to Defendant's Motion, ECF No. 31 (Feb. 8, 2017), and on February 22, 2017, the Otis Elevator Company filed a memorandum in support of its motion. Memorandum in Support of Motion to Stay, ECF No. 32 (Feb. 22, 2017).

On April 5, 2017, this Court found the motion to stay as moot, because the D.C. Circuit had issued its decision, *see Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017), and ordered the parties to submit responsive pleadings and a Rule 26(f) report within thirty days. Order, ECF No. 35 (Apr. 5, 2017).

On May 5, 2017, the Otis Elevator Company timely filed its Answer with affirmative defenses. Answer, ECF No. 36 (May 5, 2017).

On July 6, 2017, this Court issued an order denying Gorss Motels's initial motion for class certification without prejudice, or in the alternative, a stay, and instructed Gorss Motels to file the motions, if necessary, at a later date under the scheduling order issued on May 17, 2017. *See* Order, ECF No. 43 (July 6, 2017).

On June 1, 2018, the Otis Elevator Company moved for summary judgment. Def.'s Mot.; Def.'s Mem.

On the same date, Gorss Motels filed another motion for class certification, Motion to Certify Class, ECF No. 66 (June 1, 2018).

On June 22, 2018, the Otis Elevator Company filed a response to Gorss Motels's motion for class certification. Response, ECF No. 76 (June 22, 2018).

On the same date, Gorss Motels opposed the Otis Elevator Company's motion for summary judgment. Pl.'s Opp.; Pl.'s SMF.

On July 6, 2018, Gorss Motels filed a reply to the Otis Elevator Company's response on Plaintiff's for class certification. Reply, ECF No. 83 (July 6, 2018).

On the same date, the Otis Elevator Company filed a response to Gorss Motels's opposition to the Otis Elevator Company's motion for summary judgment. Reply in Support of Def.'s Mot., ECF No. 84 (July 6, 2018) ("Def.'s Reply").

On September 21, 2018, this case was re-assigned to the Honorable Kari A. Dooley. Order of Transfer, ECF No. 86 (Sept. 21, 2018).

On January 28, 2019, Judge Dooley held a hearing on both Gorss Motel's motion for class certification and the Otis Elevator Company's motion for summary judgment. Minute Entry, ECF No. 97 (Jan. 28, 2019).

On April 4, 2019, Judge Dooley denied Gorss Motels's motion for class certification. Order Denying Motion to Certify Class, 2019 WL 1490102, ECF No. 105 (Apr. 4, 2019) ("Dooley Order").

On July 2, 2019, The United States Court of Appeals for the Second Circuit ("Second Circuit") denied Gorss Motels's request to appeal the denial of the motion to certify class. Mandate of USCA, ECF No. 107 (July 2, 2019).

On July 9, 2019, this case was re-assigned to this Court for all further proceedings. Order of Transfer, ECF No. 108 (July 9, 2019).

Throughout this time, both Gorss Motels and the Otis Elevator Company have filed various notices and responses to notices regarding supplemental authority. *See* Notice of Additional Authority, ECF No. 98 (Feb. 15, 2019); Response to Notice of Additional Authority, ECF No. 100 (Mar. 20, 2019); Reply to Response, ECF No. 102 (Mar. 21, 2019); Notice of New Relevant Authority, ECF No. 109 (Jul. 29, 2019); Response to Notice, ECF No. 112 (Aug. 27, 2019); Response, ECF No. 115 (Sept. 10, 2019).

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute

of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.") (citing *Anderson*, 477 U.S. at 248).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017)("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III.    DISCUSSION

To protect consumers from unsolicited fax advertisements, Congress passed the Telephone Consumer Protection Act of 1991 and amended it with the Junk Fax Prevention Act in 2005. *See* 47 U.S.C. § 227.

The Telephone Consumer Protection Act of 1991 forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain exceptions are met. 47 U.S.C. § 227(b)(1)(C).

An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id*. at § 227(a)(5). An unsolicited fax advertisement is only permissible when (1) the unsolicited advertisement "is from a sender with an established business relationship with the recipient;" (2) the sender obtained the recipient's fax number either via "voluntary communication" from the recipient or from "a

directory, advertisement, or site on the internet" to which the recipient agreed to make the number publicly available; and (3) the unsolicited advertisement contains an opt-out notice meeting the requirements set forth in § 227(b)(2)(D). *See* § 227(b)(1)(C), (b)(2)(D).

The Federal Communications Commission ("FCC") has authority to prescribe regulations to implement the Telephone Consumer Protection Act of 1991. *Id.* § 227(b)(2); *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370 (2012) (noting the Act directs the FCC to prescribe implementing regulations). The regulations define "sender" as any "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).

The Telephone Consumer Protection Act of 1991 creates a private right of action for violations of the Act or the "regulations prescribed under" the Act, and provides for statutory damages in the amount of $500 for each violation, injunctive relief against future violations, and treble damages if the Court finds the defendant "willfully or knowingly" violated the Act. *Id.* § 227(b)(3).

The Otis Elevator Company seeks dismissal of Gorss Motels's claims for several reasons: (1) Gorss Motels lacks both Article III and prudential standing; (2) the Otis Elevator Company was not the "sender" of the fax at issue and thus is not subject to TCPA liability; and (3) even assuming Gorss Motels has standing and the Otis Elevator Company was the "sender," Gorss Motels solicited the fax at issue, and the fax thus did not need the specific, additional disclosure that Gorss Motels claims is missing. *See* Def.'s Mot. at 1. In the alternative, the Otis Elevator Company seeks partial summary judgment on the treble damages claim, because the Otis Elevator Company did not act in a "knowing or willful" manner. *See id.* at 1-2.

The Court addresses these arguments in turn.

## A. Standing

### 1.    Article III Standing

Because "standing is necessary to our jurisdiction," a federal court is required to determine standing at the outset. *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016). The "irreducible constitutional minimum" of standing in federal court requires: (1) "injury in fact;" (2) that is "fairly traceable" to a defendant's challenged conduct; and (3) that is "likely to be redressed" by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 589-90 (1992).

To support standing, an injury must be both "concrete and particularized." *Mejia v. Time Warner Cable Inc*., No. 15-CV-6445 (JPO), 2017 WL 3278926, at *7 (S.D.N.Y. Aug. 1, 2017) (quoting *Spokeo³, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). A "bare" statutory violation is insufficient to confer constitutional standing absent some "concrete" harm. *Id*. at *7. "A court is properly respectful of Congress's judgment in affording a legal remedy for the harm." *Strubel*, 842 F.3d at 188 (citing *Spokeo*, observing that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is ... instructive and important"). That said, a plaintiff cannot allege a bare statutory procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III. *See Spokeo*, 136 S. Ct. at 1549.

---

³ In *Spokeo*, the plaintiff alleged that Spokeo, a people search engine, published incorrect information about the plaintiff. The plaintiff brought suit under the Fair Credit Reporting Act of 1970 ("FCRA"), which "requires consumer reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy' of consumer reports," and authorizes private suits for willful failure to comply with any requirement of the FCRA. The Ninth Circuit found that the plaintiff had standing based on the alleged violation of the plaintiff's statutory rights under the FCRA. The Supreme Court vacated the Ninth Circuit's decision because the Ninth Circuit had considered whether the plaintiff's injury was particularized but not whether it was concrete.

Importantly, the Second Circuit has recently held that "in the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest injury in fact. But where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any additional harm beyond the one Congress has identified.'" *Strubel*, 842 F.3d at 189 (quoting *Spokeo*, 136 S. Ct. at 1549).

Otis Elevator Company argues that Gorss Motels lacks Article III standing because it cannot demonstrate a causal connection between the injury and the Fax. *See* Def.'s Mem. at 13. Otis Elevator Company asserts that because Gorss Motels conceded that it did not matter what language was in the fax's disclosures – as Steven Gorss allegedly never read any of the faxes received from Wyndham, believing that they were all "junk faxes" – the content of the allegedly deficient disclosures in the fax could not have caused a concrete and particularized injury. *See id.* at 17 ("Gorss reviewed no disclosures at all over the years, and never opted out of any marketing faces it received even when all 'required' language was present, and so there was no injury from any lack of language stating that a sender must comply with opt-out requests within 30 days."). According to Otis Elevator Company, the allegedly inadequate notices made no difference to Steven Gorss as he had no intention of opting out, but instead collected the faxes with an eye towards litigation. *See id.* at 18; Deposition of Steven Gorss, ECF No. 66-9 at 144:13-22 (June 1, 2018) ("Gorss Depo.") ("Q: Just to be clear . . . you would not have read the footer, correct, or looked much at the fax, you just would have stuck it in the pile to go to the attorneys? A: Right. Yes").

Gorss Motels argues that Otis Elevator Company's "argument is a red herring because it ignores the harms that federal courts have recognized as giving rise to concrete injury in the TCPA fax context in dozens of post-*Spokeo* cases, i.e., 'forc[ing] unwitting recipients to bear the costs of the paper and ink,' 'monopoliz[ing] the fax line,' and 'preventing businesses from receiving legitimate messages.'" Pl.'s Opp. at 9-10 (collecting cases). Gorss Motels then argues that it is undisputed that the Fax was transmitted to and printed from Gorss Motels's fax machine, thus costing Gorss Motels toner, ink, paper and maintenance. *See id.* at 10 (citing Pl.'s SMF ¶¶ 18-19, 24). Thus, Gorss Motels asserts that, in line with *Spokeo*, it need not argue any additional harm to satisfy Article III standing. Pl.'s Opp. at 10; *see e.g.*, *Gorss Motels, Inc. v. AT&T Mobility LLC*, 299 F. Supp. 3d 389, 395 (D. Conn. 2018) (Arterton, J.) ("Plaintiff need only allege this procedural right was violated and not any "*additional* harm" in order to "demonstrate[ ] a sufficient 'risk of real harm' to the underlying interest.") (emphasis in original).

Gorss further argues that even if Otis Elevator Company is correct that Plaintiff must have Article III standing to sue for a stand-alone opt-out notice violation, the TCPA establishes "the right to be free from fax advertisements whose opt-out notices are not TCPA-compliant" and "the denial of this right, in and of itself", is "the type of injury necessary to establish standing in conformance with Article III." Pl.'s Opp. at 10-11 (citing *Davies v. W.W. Grainger, Inc.*, 2016 WL 6833902, at *2 (N.D. Ill. Nov. 21, 2016); *Fauley v. Royal Canin U.S.A., Inc.*, 2017 WL 2955351, at *1–2 (N.D. Ill. July 10, 2017)). Gorss Motels asserts that Otis Elevator Company overlooks the Second Circuit's binding post-*Spokeo* case *Strubel*, wherein the Court held that the denial of the information to which the plaintiff was entitled was "by itself" enough

to show "a 'risk of real harm' to the consumer's concrete interest". Pl.'s Opp. at 12 (citing *Strubel*, 842 F.3d at 190-91 (quoting *Spokeo*, 162 S. Ct. at 1549)).

In reply, Otis Elevator Company emphasizes its prior arguments, namely that it is undisputed that Steven Gorss never reviewed any fax disclosure language, and that he does not have evidence of actual damages. Def.'s Reply at 2-3; *see also* Gorss Depo. at 116:25-117:18. Moreover, Otis Elevator Company notes the Second Circuit in *Strubel*, 842 F.3d 181, "agreed there was no Article III jurisdiction with respect to two alleged deficiencies, including the bank's failure to include a disclosure regarding its obligation to comply within 30 days." Def.'s Reply at 2. Otis Elevator Company asserts that the *Strubel* court would similarly find no Article III violation here with the alleged failures of the opt-out notice on the Fax, "which provided clear opt-out instructions that would have been honored within 30 days, had Gorss ever wanted to follow those instructions." *Id.* at 3.

The Court disagrees.

Although the Second Circuit in *Strubel* did find that the plaintiff lacked standing on two claims, it was because the claims failed to demonstrate concrete injury, not because there was no causal connection between the injury and the complained-of conduct. *See* 842 F.3d at 191. Absent clear guidance from *Strubel*, and with the ability to resolve this case without addressing the issue of standing, however, the Court need not and will not address that issue here.

Even if there is Article III standing, the case will be dismissed for other reasons discussed below.

Accordingly, the Court will not grant summary judgment on this basis.

## 2.    Prudential Standing

Otis Elevator Company also asserts that Gorss Motels lacks prudential standing and does not fall within the TCPA's "zone of interests," because Gorss Motels is a "professional plaintiff." *See* Def.'s Mem. at 19-22. Gorss Motels responds that it purchased its fax machine for legitimate purposes, and that whether it is a "professional plaintiff," because it forwarded faxes to its attorneys, has no bearing on whether or not Otis Elevator Company violated the TCPA. *See* Pl.'s Opp. at 15-17.

The Court agrees.

For the same reasons as discussed with Article III standing, the Court will not grant summary judgment on this basis.

## B.  TCPA Liability

In addressing the issue of TCPA liability, the Court begins its analysis with the FCC's solicited-fax rule, and after determining that it no longer applies, turns to whether the Fax here was solicited. Because this issue ultimately is dispositive, the Court need not and does not separately address the issue of whether the Otis Elevator Company was, in fact, the "sender" of the Fax.

In 2006, the FCC issued a rule that required businesses to include opt-out notices on solicited fax advertisements as well as unsolicited fax advertisements. *See Rules and Regulations Implementing the TCPA; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967, 25971-72 (FCC May 3, 2006) (formerly codified at 47 C.F.R. § 64.1200(a)(4)(iv)).

The FCC faced several challenges to this solicited-fax rule, and in 2014, it re-asserted its authority to promulgate the rule but granted some petitioners retroactive waivers. *See* Order, *Anda, Inc.*, 29 FCC Rcd. 13998, 13998, 14005 (Oct. 30, 2014). More petitions for review

ensued, so the Judicial Panel on Multidistrict Litigation consolidated all petitions in the D.C. Circuit. *See Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017).

The D.C. Circuit, acting as the reviewing court under the Hobbs Act, 28 U.S.C. § 2342, invalidated the FCC's solicited fax rule. *Bais Yaakov*, 852 F.3d at 1079. In November 2018, the chief of the FCC's Consumer and Governmental Affairs Bureau codified the *Bais Yaakov* decision under his delegated rulemaking authority. *See* Elimination Order, 33 FCC Rcd. at 11179; *see also* 47 C.F.R. §§ 0.141, 0.204. The order "eliminate[d] the Commission's rule requiring opt-out notices on faxes sent with the recipients' prior permission or consent." Elimination Order, 33 FCC Rcd. at 11179.

In light of the D.C. Circuit's decision in *Bais Yaakov*, the Otis Elevator Company argues that the law is now clear: the TCPA's specific disclosure requirements only apply to unsolicited facsimiles. Def.'s Mem. at 27-29; *see also* 852 F.3d 1078, 1083 (D.C. Cir. 2017) ("The text of the Act does not grant the FCC authority to require opt-out notices on solicited faxes.").

The Otis Elevator Company then argues that Gorss Motels gave WSSI permission to send the Fax. Def.'s Mem. at 29. Gorss Motels provided its fax number to Wyndham in its several documents, notably Gorss's 2014 Franchise Agreement and the Property Improvement Plan Report. *Id.* at 30; *see also* Def.'s SMF ¶¶ 29-30, 36, 50-51 (undisputed by Pl.'s Opp.). The 2014 Franchise Agreement addressed the "Approved Supplier" program and provided that "affiliates" may offer assistance in purchasing approved items conforming to system standards. Def.'s Mem. at 30 (citing the 2014 Franchise Agreement).

According to the Otis Elevator Company, "WSSI was doing exactly what Gorss contractually agreed that Wyndham entities could do: provide assistance to franchisees with purchasing items from Approved Suppliers that would conform to the Wyndham system/brand

standards." *Id.* at 31. And Gorss Motels continued to provide its fax number to Wyndham, despite knowing that it was receiving faxes from WSSI. *Id.*

According to the Otis Elevator Company, "[m]erely providing a fax number—by itself—is sufficient for finding permission or invitation to send marketing faxes." *See id.* at 30; *see, e.g.*, *Practice Mgmt. Support Servs., Inc. v. Appeal Sols., Inc.*, No. 09C1937, 2010 WL 748170, at *3 (N.D. Ill. Mar. 1, 2010) ("[W]e find that plaintiff's voluntarily [sic] communication of its fax number precludes [plaintiff] from asserting that the faxes were unsolicited under the TCPA."). Because Gorss gave express permission to Wyndham for WSSI faxes to be sent to its fax number, Otis maintains that no opt-out language was required, and so the Fax did not violate the TCPA. *See* Def.'s Mem. at 32.

The Otis Elevator Company also argues that, assuming it was the "sender," it had express written consent to send the Fax. *Id.* at 32. According to the Otis Elevator Company, when Steven Gorss, on behalf of Gorss Motels, signed a Property Improvement Plan Report promising to make certain corrections to the property in order to renew its 2014 Franchise Agreement, this agreement included Gorss Motels's contact information for use by Wyndham's approved vendors "for the purpose of their offering [Gorss Motels] products and services" involved in Wyndham-required repairs and updates to the Gorss Motels property. *See id.* at 33; Def. SMF 50-51 (disputed by Plaintiff only to the extent that this action constituted prior express permission).

On August 26, 2014, Gorss Motels signed the stand-alone Property Improvement Plan Report, thus acknowledging and agreeing that its contact information, including its fax number, would be provided to Wyndham's approved vendors. *See* Def.'s Mem. at 33. These approved vendors offered goods or services relevant to required fixes outlined in the Property

Improvement Plan Report, which included elevator repairs. *See id.* Otis Elevator Company thus argues that Gorss's signing of the Property Improvement Plan Report constituted prior express consent to receive the Fax. *See id.* at 33-34. As a result, the Fax did not violate the TCPA. *See id.* at 34.

In response, Gorss Motels argues that the Otis Elevator Company fails to establish that it had Gorss Motels's "prior express invitation or permission to send fax advertisements," because the Otis Elevator Company did not have permission directly from Gorss Motels. Pl.'s Opp. at 20. According to Gorss Motels, under the TCPA, "the *sender* must obtain the prior express invitation or permission from the consumer before sending the facsimile advertisement," and "the burden of proof rests on *the sender* to demonstrate that permission was given." Pl.'s Opp. at 20 (citing *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 21 FCC Rcd. 3787, 3811–12, ¶ 45–46 (Apr. 6, 2006) ("2006 Order")) (emphasis added). In other words, in Gorss Motels's view, prior express permission cannot be transferred. Pl.'s Opp. at 20.

Gorss Motels also argues that permission to Wyndham similarly cannot be imputed to the Otis Elevator Company, and that the FCC rules require the sender to show that "by providing such fax number, the individual or business agrees to receive facsimile advertisements from that company or organization." Pl.'s Opp. at 20 (citing 2006 Order ¶ 45); *see also Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 484 (W.D. Mich. 2014) (denying summary judgment and finding faxes were unsolicited as a matter of law where permission was at best "indirect," and not express, since physician gave fax number to AMA, not the "sender" whose goods or services were advertised).

In Gorss Motels's view, "there is no evidence Wyndham obtained Plaintiff's prior express permission to send fax advertisements in the first place." Pl.'s Opp. at 21. Gorss Motels

notes that the existence of a franchisor-franchisee relationship does not necessarily result in "prior express invitation or permission" to send fax advertisements, let alone advertisements for goods and services of entities other than the franchisor. *See id.*

To Gorss Motels, while the franchisor-franchisee relationship likely constitutes an existing business relationship ("EBR"), that defense[4] requires that the opt-out notice be compliant, which Gorss Motels maintains the Fax was not. *See id.* Moreover, Gorss Motels asserts that failing to opt out is not the same as providing express invitation or permission. *See* Pl.'s Opp. at 23; *see also Stryker*, 65 F. Supp. 3d at 496 (denying TCPA defendant's motion for summary judgment raising same argument, holding that "tolerating" fax advertisements is "not the same thing as an express invitation or permission"); *Career Counseling, Inc. v. Amsterdam Printing & Litho, Inc.*, No. 3: 15-cv-05061 (JMC), 2018 WL 3037106, at *5 (D.S.C. June 19, 2018) (noting that "the fact that [plaintiff] did not opt-out of receiving future faxes, does not mean that she took an affirmative action to opt in to receiving future faxes").

Finally, even assuming Wyndham obtained prior express permission to send facsimile advertisements to Gorss Motels and that this permission can be transferred to the Otis Elevator Company, Gorss Motels argues that "the binding FCC regulations require compliant opt-out notice on fax advertisements, even if the sender obtained the recipient's 'prior express invitation or permission.'" Pl.'s Opp. at 24 (citing 47 C.F.R. § 64.1200(a)(4)(iv)). In Gorss's view, the D.C. Circuit's decision is not binding with respect to the validity of the FCC's 2006 solicited-tax regulation in the Second Circuit. *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) ("until

---

[4] The elements of this defense are: (1) a recipient's "voluntary communication" of a fax number to a fax sender; (2) that there is an established business relationships between the sender and recipient, as defined by 47 C.F.R. § 64.1200(f)(6); and (3) that the fax contains a fully compliant opt-out notice. 47 U.S.C. § 227(b)(1)(C)(i)-(iii).

the Supreme Court speaks, the federal circuit courts are under duties to arrive at their own determination of the merits of federal questions presented to them").

In reply, the Otis Elevator Company emphasizes that because only unsolicited faxes need to contain TCPA opt-out language, Gorss Motels's TCPA claim fails as a matter of law. Def.'s Reply at 5. "Through Gorss's execution of the August 2012 PIP, Gorss specifically gave consent for its contact information to be used for offers from Approved Suppliers related to that PIP – and the contact information provided to Wyndham clearly included Gorss's 8889 Fax Number, provided voluntarily by Gorss." *Id.*

In the Otis Elevator Company's view, the D.C. Circuit's reversal of the FCC solicited fax rule in *Bais Yaakov* undermines Gorss Motels's argument that all fax advertisements require opt-out disclosures. *See* Pl.'s Opp. at 25; Def.'s Reply at 5. The Otis Elevator Company distinguishes this case from those relied upon by Gorss Motels because here, there is more than one signed document by Gorss Motels agreeing to be contacted by Wyndham's approved vendors for relevant services. *Id.* at 5-6. Additionally, contrary to Gorss Motels's argument, *see* Pl.'s Opp. at 21, the Otis Elevator Company does not assert an established business relationship defense. Def.'s Reply at 6. Rather, the signed Property Improvement Plan Report's clear language establishes the prior consent that takes the Fax outside of the TCPA's protections for unsolicited faxes. *Id.*

The Court agrees.

As explained in the recent order denying class certification, the Second Circuit views the D.C. Circuit's decision in *Bais Yaakov* as binding. *See King v. Time Warner Cable, Inc.*, 894 F.3d 473, 476 n.3 (2d Cir. 2018). In that decision, "[u]nder the Hobbs act, the courts of appeals 'ha[ve] exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine

the validity of ... all final orders' of the FCC that are reviewable under 47 U.S.C. § 402(a). 28 U.S.C. § 2342(1)." *King*, 894 F.3d at 476 n. 3. And "[w]hen agency regulations are challenged in more than one court of appeals, as they were in the present case, 28 U.S.C. § 2112 requires that the multidistrict litigation panel consolidate the petitions and assign them to a single circuit." *Id.* When the "[c]hallenges to the 2015 Order were assigned to the D.C. Circuit, [that court] became 'the sole forum for addressing ... the validity of the FCC's' order." *Id.*

District courts within the Second Circuit take the same view. *See Gorss Motels, Inc. v. AT&T Mobility LLC*, No. 3: 17-cv-403 (JBA), 2019 WL 625699 at *6 (Feb. 14, 2019) ("In light of the position of the Second Circuit regarding the binding effect of consolidated appeals of FCC regulations, the text of the statute, the reasoning of the *Bais Yaakov* decision, and the position of other courts which have addressed this issue, the Court will similarly join those that have concluded that they are bound by the holding of *Bais Yaakov*."). The FCC's 2006 solicited fax rule therefore does not control here.

The TCPA's specific disclosure and opt-out requirements then only apply to unsolicited facsimiles. The Court thus must determine whether this Fax was solicited or unsolicited, consistent with *Bais Yaakov*. *See Bais Yaakov*, 852 F.3d at 1082 ("The question is whether the Act's requirement that businesses include an opt-out notice on *unsolicited* fax advertisements authorizes the FCC to require businesses to include an opt-out notice on *solicited* fax advertisements. Based on the text of the statute, the answer is no.") (emphasis in original).

In answering this question, the critical issue is not whether a franchisor-franchisee relationship itself constitutes consent or prior express permission, at least in this case. Instead, there are two agreements entered into by Gorss Motels that ultimately provide the requisite "prior express invitation or permission." *See* 47 U.S.C. § 227(a)(5) ("The term 'unsolicited

advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise.").

First, the 2014 Franchise Agreement specifically addressed WSSI's Approved Supplier program, which provided that Wyndham "affiliates" may offer assistance in purchasing approved systems conforming to system standards. *See* Def.'s SMF ¶¶ 32, 34 (undisputed by Pl.'s SMF ¶¶ 32, 34). Second, the Property Improvement Plan Report stated that Gorss's contact information could be used by Wyndham's approved vendors "for the purpose of their offering [Gorss] products and services." *See* Def.'s SMF ¶ 51 (citing Fenimore Decl. Ex. G, ECF No. 73-10 at 12); *see also* Gorss Depo. at 128:14-129:9; 130:21-131:1.

Although Gorss Motels argues that these documents do not constitute prior express permission, but instead implied permission, *see* Pl.'s Opp. at 23-24 (citing *Career Counseling*, 2018 WL 3037106, at *5), unlike in *Career Counseling* (which did not involve any signed agreements), in both of these signed agreements, Gorss Motels affirmatively opted into receiving faxes.

Indeed, Gorss Motels executed both the 2014 Franchise Agreement and the Property Improvement Plan Report and listed its fax number and agreed to receive information from its franchisor's affiliates and approved vendors. Significantly, Otis Elevator Company is one of these affiliates and approved vendors.

The Property Improvement Plan Report identified Gorss Motels's property as in need of elevator repairs, repairs to be completed within one year. Def.'s SMF ¶¶ 52, 53 (undisputed by Pl.'s Opp. ¶¶ 52, 53). The Gorss Motels property had an elevator from the Otis Elevator Company. As a result, the Otis Elevator Company would be the approved vendor for the

required repairs. *See* Gorss Depo. at 49:18-24. Because Gorss Motels has conceded that no limitation was placed on the Property Improvement Plan Report as to how it could be contacted, communication by facsimile was permissible. *See* Gorss Depo. at 133:15-23 (Q: confirming that "there's no limitation in [the Property Improvement Plan Report] that says [contact] would only be by a phone call or by a letter, correct? A: Correct. What it says is what it says, yes.").

A recent summary judgment decision in a TCPA case involving Gorss Motels, from another Circuit and, although not binding on this Court, nevertheless is instructive. In *Gorss Motels, Inc. v. Safemark Systems*, "the faxes did not violate the prohibition on unsolicited faxes because the hotels had provided prior express permission to receive faxes from [the Defendant] in their franchise agreement." 931 F.3d 1094, 1096 (11th Cir. 2019). Although Gorss Motels similarly argued that it never provided prior express permission to receive faxes from Safemark, another Wyndham approved vendor, "their franchise agreements constitute an 'official act of allowing' Safemark the liberty to send them faxes." *Id.* at 1100 ("In their franchise agreements, the hotels agreed that Wyndham 'may offer optional assistance to [them] with purchasing items used at or in the Facility,' and they specifically agreed that Wyndham 'affiliates may offer this service on [Wyndham's] behalf.'").

"[B]ecause the franchise agreements contemplated that the hotels could receive optional assistance' with 'purchasing items' from Wyndham and its affiliates. . . . [b]y providing their fax numbers in their agreements, the hotels invited the assistance or advertisements to come by fax" *Id.* at 1101. Significantly, "testimony about what Steven Gorss subjectively thought is immaterial because the hotels had already provided their express permission in their franchise agreements." *Id.* at 1102.

Here, as in *Safemark*, Gorss Motels did not rescind the permission provided in both the 2014 Franchise Agreement and the Property Improvement Plan Report for Wyndham affiliates to contact it. *See* 931 F.3d at 1102. Both documents signed and executed by Gorss Motels authorized contact by facsimile, making the Fax here a solicited one. Because the Fax was solicited, no opt-out language was required. *See Bais Yaakov*, 852 F.3d at 1082 ("Although the Act requires an opt-out notice on unsolicited fax advertisements, the Act does not require a similar opt-out notice on *solicited* fax advertisements—that is, those fax advertisements sent with the recipient's prior express invitation or permission"); *see also* 47 U.S.C. § 227(a)(5) ("The term 'unsolicited advertisement' means [one] . . . without that person's prior express invitation or permission, in writing or otherwise.").

And because the Fax was solicited, the Otis Elevator Company did not violate the TCPA.

Accordingly, the Court will dismiss Gorss Motels's TCPA claim against the Otis Elevator Company.

## IV.     CONCLUSION

For the foregoing reasons, the Otis Elevator Company's motion for summary judgment is **GRANTED**.

The Clerk of the Court is respectfully requested to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September, 2019.


/s/ Victor A. Bolden

VICTOR A. BOLDEN

UNITED STATES DISTRICT JUDGE